Second case on our docket is 21-20103 Moore v. Burlington Northern Santa Fe Railway Company Mr. Reeves Good morning, your honors. May it please the court, my name is Colin Reeves, counsel for appellant Robert Moore. Every litigant is entitled to a full and fair impartial hearing and an opportunity to make his case. Robert Moore did not have that opportunity here. As the district court has done before in other cases, it prejudged this action from the outset by turning the initial and only pretrial conference into a shotgun trial on the merits, by prohibiting the parties from engaging in discovery and an opportunity to make their claims and defenses, by refusing to let Mr. Moore amend his complaint even once, and then by granting BNSF, Mr. Moore's employer, summary judgment in a badly flawed opinion that completely ignored Mr. Moore's objections to the lack of discovery. So I'd like to focus on two points today. First, on the district court's procedural errors, with a focus especially on the discovery restrictions. And then on the question of summary judgment focused on Mr. Moore's ADA claims and on the fact that even though Mr. Moore didn't have any opportunity to take any discovery, and on the slim record that's available to the court here, there's actually a striking amount of evidence that shows that BNSF's reasons for firing Moore were pretextual. So turning to that first point, the law is clear that summary judgment is generally appropriate only after discovery, or only at least after some discovery. And that's especially true in employment discrimination cases like this one that hinge on a fact-intensive inquiry into an employer's reasons for firing a person. What discovery did you specifically ask for? Right. So Mr. Moore's first opportunity to ask for discovery was in his response to BNSF's motion for judgment. And what he specifically said that he needed discovery for was on comparators, comparator evidence for his ADA claim, and also on pretext. And then on his COBRA notice claims, he obviously needed discovery on BNSF's health care plan as well as on notice. And so I just direct the court to pages 112 and 113 of the record, where in his response, Moore noted that the only thing that's really at issue on the ADA claim, for instance, is pretext. And he said that, so I'm now quoting him, is that it's axiomatic that Moore's ability to produce evidence from which a jury could conclude that BNSF's articulated reason is pretextual has been hampered by his inability to conduct discovery. So he clearly noted what sort of evidence he needed, why it was relevant to his claim, and then also why he did not have that evidence at that point. And under this court's law, dating back at least until the early 1970s, that's all a litigant needs to do to make it clear that he needs discovery. Were there, correct me if I'm wrong, weren't there initial disclosures made that included a document production? That's true, yes. There were initial disclosures, but that's all that was done here, actually. So I'd also note that in Miller, one of the cases that we rely on here, in which the same district court and very similar set of facts, that there was kind of an argument that the defendant made, is that, hey, the plaintiff, although the plaintiff didn't actually get much discovery, that plaintiff actually did get some discovery in addition to initial disclosures, that there was a large agency record, because in employment discrimination, plaintiffs have to exhaust their administrative remedies, and in the process of that, a record is produced. And the court said, well, that's not enough. That's not a substitute for actual discovery, for an opportunity to look deeply into what the employer's reasons were. No, he wasn't allowed discovery, but did he attempt to file any interrogatories or any requests for admissions? No, he did not. I mean, the district court's order prohibits that. There is no opportunity for written discovery or depositions, and I would argue that. He requested a continuance, right? I'm sorry? He requested a continuance? Not in so many words, but he clearly implicitly requested it in his response. And I would also note that there's nothing in this court's interpretation of Rule 5060 or in 5060 itself that requires any kind of request for a continuance or a motion for discovery. All that this court's law requires is actually just a statement that's preferably in writing. It doesn't even need to be in writing that conveys the need for discovery, and that's what he did. And also this court has made clear dating back at least until the 1980s, and I think it was in the Xerox case that we cited, that when somebody hasn't even had any discovery, they don't have to be particularly specific in what they're asking for, in part because what they're really asking for is just any discovery at all. Did I understand you correctly? The district court's scheduling order does not permit discovery other than the initial disclosures until this particular status conference occurred? There is no scheduling order per se in this case. So the district court has a standing order, effectively a standing order, that it issues apparently in all of its cases, because if you look at Miller and McCoy and other cases that the same district court has handled, those orders are almost all identical. And what it says is that disclosures are required, but beyond that everything else has to be done just with the court's leave. So there's nothing else that can be permitted. And here I would argue that Mr. Moore did not specifically request anything before BNSF's motion for judgment is entirely understandable, because what we had is the initial pretrial conference, and what happened there was that BNSF, at the court's urging, effectively made an oral motion to dismiss the case, and BNSF recognized that that's what it was doing in its brief. I think it's on page 7 that it says that it orally moved to dismiss for failure to plead relevant facts or sufficient facts. So everything would have indicated that once the next day after the conference, the district court entered an order saying that BNSF may move for judgment, that a Rule 12 motion would be forthcoming, not a Rule 56 motion. So you mentioned the need for discovery in your opposition to the motion practice. Right. That was all which came just a few days later. I didn't propound any before that, given the fact that you had this status conference coming. Then the motion is filed. You think it will be a Rule 12, but it winds up being a summary judgment Rule 56, and you respond by saying, I need to do discovery about the issues that you just mentioned. Yes, clearly conveying a need. There's a section in that response that says that's about why discovery is needed in cases against BNSF in particular. So we believe then that the district court, by granting summary judgment without even paying any heed to Moore's objections, clearly abused its discretion, just similar to what it's done in other cases. I'd just like to say a few points about the court's denial of Moore's motion to amend, which he made within a week or shortly the week after that initial conference. BNSF responded, and on the very day that BNSF responded, and without giving Moore an opportunity to reply, the court issued a three-sentence order denying Moore's request to amend. I've read that order half a dozen times, a dozen times, and I don't really understand the basis for it. This court's law is clear that, given the liberal presumption of giving parties an opportunity to amend their pleadings, that a district court has to explain adequately why they're doing it, if they deny it, why they are denying it. I submit that I don't think that is at all clear here and is also an abuse of discretion. Moving on to the summary judgment argument here with a focus on the ADA claim. I think it's helpful to just take a step back and think about what this case is all about. It's about an employee who disclosed that he had cancer, that he had an ADA-protected disability, and then two days later he was fired by his employer. The employer, of course, BNSF, argues that it didn't fire him because of that but for some other reason. We sort of have a quintessential case of two opposing tales about what happened, where the core issue is the truthfulness of BNSF's explanation for why it fired him and whether it's worthy of credence. That's the kind of thing that, one, is essential to why discovery is essential to preparing and presenting that case, but also it's the kind of thing that juries decide all the time. So, but the district court just kind of overlooked several of Moore's arguments about pretext and it made credibility determinations about, for instance, about why or the timing of Moore's disclosure of his cancer and all things which it could not do on this posture. So it's helpful, I think, when you just do that even with, even though Moore had had no opportunity for discovery, that the record, with the slim record, it just really actually, I think, strikingly supports a strong inference of pretext that this court's discrimination jurisprudence and courts from around the country all recognize several categories or several ways or methods that plaintiffs can prove pretext and many of them are present here on this record. So first, we have timing. Moore told his supervisor that he had cancer and needed leave on August 15th. Two days later, that supervisor fired him. The next is we have an over-the-top punishment for some supposed workplace infraction, but it's the BNSF's response to what it says that Moore did is really kind of mind-boggling. It fired him because he was a conductor in a train that an engineer was driving and that engineer was speeding and it therefore fired Moore and says that he was accountable or liable for some reason because of what that engineer did. But there's no evidence in the record that shows that BNSF ever does this kind of thing, that it ever fires people or terminates or disciplines in any kind of way some employee for some other employee's infraction. And the rules that BNSF points to to support its decision to fire him as we laid out in our briefs and BNSF does not meaningfully respond to it, they actually just don't show that Moore, by simply being present and doing his job and monitoring and recording the train speed, violated any kind of rule. And these things are significant because what an employer's policy requires and whether an employee violates it are questions for a jury. And so those things clearly go to pretext here. Next we have a shifting rationale for why they fired Moore. So they below or contemporaneously with why they fired him, Moore's supervisor emailed, and this is on page 380 of the record, emailed HR saying that he wanted to go forward with firing Moore based on the supposed speeding violation. Now, after the case started, BNSF says, well, it's not just speeding, it's also some alleged boasting that Moore did and his failure to report what the engineer did. But those things, it never said that below. These are all new explanations. Just a couple more points of evidence that all support pretext. There's evidence that there are comparators that would be relevantly similar to Moore about other probationary employees who were fired. So they were not fired even though they actually committed rule violations so that BNSF has effectively diverged from its disciplinary policy. And then on top of that, it never even gave Moore an opportunity to respond to its allegations that he had violated any rules. So that he had somehow violated the rules just didn't seem to be anything that they ever, it just doesn't indicate that they actually, that that was something they were particularly concerned about because they say that they did an investigation, but we know very little about that investigation. But what we do know is that they didn't ever speak with Moore. They just immediately fired him after and only after he disclosed that he has cancer. So if there are no further questions, I'll sit down. Good morning and may it please the Court. My name is Mike Aprud representing the FLE BNSF Railway Company. With my time this morning, I plan to cover two topics. The first is the District Court's grant of the summary judgment motion and the second is the District Court's denial of the motion to amend. With respect to the former procedural Can you start with discovery, denial of discovery? Absolutely, Your Honor. With respect to the discovery issue, I take issue with some of the characterization that has just been presented. The Court's order at issue here is on page 16 of the record and that order prohibits only interrogatories, depositions, and requests for admissions without the Court's permission. Those limitations are expressly authorized by Rule 56, excuse me, Rule 26. This Court has also, in the Miller case last year that both parties cite, has described this order as being perhaps unremarkable. What the order does not do is prohibit all discovery, as has been said in briefing and then argued this morning. That order does allow parties to serve requests for production and that was never done here at any point in this case. In addition, that order required the parties to immediately engage in initial disclosures and to exchange those documents and to discuss them well before the initial case conference. BNSF did that and submitted more than 1,600 pages of documents to Mr. Moore, including the anonymous hotline complaint that resulted in his dismissal and documents relating to the engineer that he says, and we believe wrongly, is the comparator. So the notion that there was no discovery allowed under the rules is just factually wrong. It's also wrong in the sense that when the Court had this case management conference, one of the stated things in the Court's order on page 16 is that the parties need to be prepared to discuss discovery. The Court will see from the record that there was a lengthy, fairly lengthy discussion with the judge about the merits of the case, but at no point did any of Mr. Moore's three attorneys who attended that conference tell the judge that we need additional discovery, here's what the discovery is. He takes issue with that, doesn't he, or not? Doesn't he take issue with that? In what sense, Your Honor? I thought he took, are you talking about in the actual conference itself? Yes, in the actual conference, none of the Moore's. Is the entire conference on a transcript or just portions of it? The judge typically would have the whole status conference with a court reporter present? Yes, Your Honor, Judge Engelhardt. The entire conference, it's the very end of the record, 520-something I believe is where it begins. And you'll see at the end of that transcript, he asks specifically each of the three lawyers, do you have anything else you want to discuss? Each of them said no. The judge, because BNSF had indicated that we believed it was appropriate to move for judgment, set out a briefing schedule and asked Mr. Moore's counsel, do you believe, is that okay? And Mr. Moore's counsel said, yes, that seems reasonable. That's the last two or three pages of the transcript. And at no point during that conference did they say, well, no, that's not reasonable because we need additional time to do discovery. Did that schedule have anything built in in terms of a delay for discovery opportunities? No, Your Honor. He verbally made the order and then he issued it the next day and it just said BNSF will file its motion, I believe, in seven days. I'm talking about the schedule. As I understood your last comment that you went into the conference and had a proposed schedule that you offered the court an opposing counsel, seeking the court's approval and counsel's agreement. Did I understand you correctly? I may have misspoke if I said that, Judge Eulhard. The court had a schedule then. That's right. We indicated that we thought it was appropriate to move for judgment. Okay. And the judge then verbally set a briefing schedule, and it was just for our brief and then the response. Was it understood then that it was going to be a Rule 56 motion or was it nonspecific? It was nonspecific. We discussed the merits of the case but not any particular rule. And counsel said, look, we expected a Rule 12. That may have been the case, but when they then received our motion in accordance with the briefing schedule, it expressly moved not only under Rule 12 but also Rule 56. They knew it was a motion for summary judgment, and they responded in kind by submitting evidence and calling it a summary judgment response. In that response. And invoked 56D. No, Your Honor, that's the important distinction here. They did not invoke Rule 56D at any point in the proceeding. And so the really key critical document here is the response that they filed to our motion for judgment. And that is the document that they say contains these requests for discovery. And we submit that when you read that document, that is just plainly not in there. The vast majority of the discussion of discovery is a, and you'll see this from the declarations they attached, is a form argument that this attorney below uses. He frequently represents employees who sue the railroad, and he believes that BNSF is a bad actor in other cases. And so he includes in his briefing a litany of complaints he has about things BNSF has done in other cases. That's the bulk of the discussion of discovery. Then there are scattered references to the fact that no discovery had been taken yet. And, of course, that is true. But those references don't say, but I need a continuance and here's the discovery I want. The very closest they come is when they say, it would have been prudent to allow discovery on the issue of comparators and on the issue of the ERISA plan. That's the closest they get. Of course, saying it would be nice if I could have done X is not the same as telling the judge I want you to let me do X. The latter is a request or a motion the judge can say yea or nay to. The former is just general grousing about the facts. Rule 56 is very specific about what it requires. Among other things, it requires a declaration or affidavit. This court has said in certain circumstances we're not going to uphold that portion of the rule strictly, but it's only done so when there have been express requests by the opposing party that substantially comply with Rule 56, and that wasn't done here. This court in the Wichita Falls case that the parties have discussed in their briefs set out three prongs that must be satisfied in order to trigger Rule 56D. The first is that you have to make a timely request. That wasn't done here because there's no request in this response. The second is that you have to tell the court that you need additional discovery in order to respond to summary judgment. That wasn't done here at all. And the third prong is that you have to then explain how the discovery you're seeking will specifically allow you to oppose summary judgment. That wasn't done here. There's a fourth prong in Wichita Falls that deals with instances late in the case where a party has not been diligent, but that prong is not relevant here given the posture of the case. Not only did Mr. Moore not do those three things, he affirmatively said the opposite, and he told the judge, and we cited this in our briefing, I have enough evidence now already in order to oppose this summary judgment motion, and here it is. I've attached all these declarations. I've attached transcripts from other cases where I think that being self-engaged in bad actions, all sorts of evidence. It was hundreds of pages in his appendix. That's the exact opposite of what Rule 56D is designed to do, which is to protect people who say, I don't have enough evidence. He said the opposite. Because of that, when you have a situation where a party has never asked for discovery, never mentions the rule at all, never tells the judge, here's what I want to do, here's why I need it, and here's why I need a continuance. In fact, when they affirmatively tell the judge, I already have enough in my hands to oppose summary judgment, we believe it just can't be an abuse of discretion for the judge to then rule on the motion without sua sponte saying, hey, would you like to go do some additional discovery? You ought to go ahead and do that. The next issue that's sort of threaded through these arguments is the fact that the Honorable Judge Hughes, of course, is the judge below. And we know that this court has taken issue in other cases with some of Judge Hughes's actions. And although Mr. Moore doesn't come right out and say it, what he seems to be arguing for is a different standard to apply in cases that involve Judge Hughes. And we believe that that would just be fundamentally inappropriate. The things that this court has criticized Judge Hughes for in other cases simply are not present in this case. Some of those cases involve personal attacks on counsel or derogatory statements about parties. In one instance, there's a situation where Judge Moore participated and asked questions at a plaintiff's deposition. Those sorts of things just are completely absent here. When you take out the discovery issue, which we think you should because Mr. Moore never actually made a request for discovery, what you have here is a pretty unremarkable set of facts. Again, you've got an employee who was fired, who sued for discrimination, and then lost summary judgment and appealed. The things that they have identified here in their brief and then repeated again today are just simply insufficient under this court's precedent. It's important to note that in his response to the summary judgment motion, this is on page 112, Mr. Moore conceded that BNSF had articulated a legitimate nondiscriminatory reason for terminating him. So because of that, the only issue before the district court was whether Mr. Moore had sufficient evidence to establish a pretext. The things that he relied on down below were comparators who were not similarly situated to him, protestations of innocence. Well, let me say, the comparators are irrelevant because this court says comparators are only relevant if they're similarly situated. He next then argued, well, I was innocent of these charges or sort of a variation of what esteemed counsel said this morning, which is that, well, we don't really interpret these rules the way that BNSF does. But in fact, BNSF put on evidence, this is starting on page 57 of the record, through a declaration by an individual named McGee who explained these are what the rules are. The engineer and the conductor are both responsible for ensuring the safety of the train, including the speed of the train. Here's why we interpreted these rules this way, and here's what we determined that Mr. Moore did wrong. He presented no evidence at all. The burden, again, on him is to show that there were other people who were similarly situated who were treated better differently, and he simply did not do that here. Why wasn't the engineer found? That's an excellent question. The engineer, as we mentioned in our brief, was a union employee. He had certain procedural rights. One of those is that before BNSF can take action against him, it has to hold what's called an on-site hearing, sort of a mini-trial where the parties present evidence and call witnesses and do things like that. Did that happen? It did not, and the reason it didn't happen, and this makes Mr. Evans even less of a comparator, is that when BNSF told Mr. Evans, and of course it suspended both of them on the same day, said you're not allowed to work, and then it told Mr. Evans we're going to have this proceeding. One of the rights he has as a union member under certain circumstances is to forego the formal hearing and to accept a lesser form of discipline, and that's beneficial to the employee because you have certainty. It's beneficial to the company because if the company moves forward with discipline, the unionized employee has appeal rights to the public law board, and so it's a bargain the company strikes. And so when the company told Mr. Evans that it was going to investigate him, Mr. Evans accepted what's called the waiver, which means I'm not going to have this hearing, I'm just going to take this lesser discipline, which was a suspension without pay for a period of time, and then I believe a three-year probationary period. So he didn't, Mr. Moore, didn't have that right at all in order to have the waiver. That's a big reason why the two just are not similarly situated. There was a reference this morning to shifting explanations as evidence of pretext. That wasn't briefed below. There wasn't an argument that they raised, and we don't believe there's evidence that BNSF changed its position at all. The e-mail he's referring to is a shorthand e-mail from a supervisor internally saying, as a result of this speeding incident, I think he capitalizes it, we're going to move forward with this discipline against Mr. Moore. The fact that this e-mail didn't articulate all the things that happened in that incident is not evidence of a shifting pretext. As BNSF said in its response and has always said, Mr. Moore engaged in multiple infractions, including not reporting it and then boasting about it afterwards. There was also a claim this morning that Mr. Moore didn't have a chance to respond to BNSF's discipline, that it just fired him out of the blue. But, again, that's just another variation of the procedure wasn't fair. That's not evidence of pretext. And then the last thing he argued was that the temporal proximity was enough to show pretext. But this Court has said temporal proximity may get you to the prima facie case. It doesn't get you pretext. And so none of the things that he argued in response to the motion for summary judgment, either individually or taken together, were sufficient in order to carry his burden as the non-movement of the summary judgment motion. I will now, unless the Court has other questions about those topics, address the motion to amend. To set the stage, the motion to amend only involved Mr. Moore's COBRA claim against BNSF. It didn't involve his ADA claim. So what he wanted to do in this motion to amend, first of all, was to add the plan administrator. That's, frankly, the party he should have sued in the first place because that's the party who has the legal obligation under the law to send him this COBRA notice. So we were then and we are now agnostic to that change. With respect to BNSF, though, we did have an issue. So in his initial complaint, he said, BNSF, you violated COBRA because you did not send me the COBRA notice. We responded and said the law doesn't place that obligation on us. So in his amended petition, what he wanted to say was, well, BNSF, you violated COBRA by not telling the plan administrator that I was fired. So he changes his theory on the COBRA claim. And, again, he was very specific in his original appendix, original complaint, that the allegation was BNSF did not send him the notice. The problem with that amendment as it related to BNSF is that he had already told the Court, I don't know if this is true or not. I don't know whether or not BNSF did or did not give this notice to the plan administrator. And we argued in our response to his motion to amend, that's not sufficient. Under the Iqbal Twombly standard and this Court's precedent, you have to have more than just mere speculation about how you were harmed. This is actually a step beyond speculation. It's him saying, I don't know if this is true or not. And we, in our response, told the judge, we don't think it's appropriate to plead something affirmatively that you've already said that you don't know is true. We certainly recognize that you can have alternative arguments, but you still have to have a basis for each of those alternative arguments. You can't plead something that you've already said is not true. And although Judge Hughes's opinion on this we'll acknowledge is not lengthy at all, what he does say is that Mr. Moore may not expand this case with claims for which he has no factual support. We believe that that is simply accepting the argument that we make, which is he's already said he doesn't know this is true. He shouldn't be allowed to amend it. Even if the Court disagrees, however, with that, this Court's precedent in Dusoy and other cases make it clear that you can— He never made that request for discovery or any other request for discovery. In his response to the motion for judgment, he did say it would have been prudent to allow me discovery on the Cobra claim. Now, again, for the response to the motion for summary judgment, that statement isn't identifying something that would allow him to oppose summary judgment because the issue on summary judgment was the original complaint, which said the violation was that BNSF had not given him the notice. He never came forward in the response or in the motion to amend or any other time and said, Judge, I need a continuance on these issues under Rule 56D in order to obtain discovery about these issues. He's taken issue with the evidence that BNSF attached to that motion. Again, that was not what BNSF was relying on. We felt we had a duty of candor to the district court to include this evidence that we had in our files, which showed that this notice from the plan administrator at least was generated and addressed to Mr. Moore. Mr. Moore says, well, he didn't receive it, and that's between Mr. Moore and the plan administrator if he goes forward and decides to sue them. But we felt we had an obligation to tell the Court we at least had this document in the file, and if you allow him to amend, here's the evidence that we would put forth in a Rule 56 motion in order to oppose that motion to amend. So we wanted to be transparent with the evidence that we had. And what's your allegation as to how that was transmitted to him? Was it an email or a certified mail? The plan notice? We only have a copy in our file of the notice itself. I don't know this for a fact. It's not in the record, but I believe that when the plan administrator sends out these notices, it sends a copy to the company. I don't believe that on its face it shows how it was transmitted to Mr. Moore. Is that just part of general information you get as an employee, or is that once you say that you've been injured or you're sick or you need? It's the latter. So the notice that's at issue here is the notice that after you've been fired, the law says the plan administrator has a duty to send you a notice that says, here's all your rights under COBRA if you want to expand or continue your coverage. So in conclusion, Your Honor, I'm happy to answer other questions that any of you may have, but what we have here is a situation where Mr. Moore faults the district court for things that the district court is found to have done in other cases and for not giving him additional discovery despite the fact that he never requested discovery and did just the opposite and said I've got enough discovery already to oppose the summary judgment motion. When you remove those allegations, as we believe the court should, all you're left with is a straightforward summary judgment finding against an employee who responded with things that this court has said as a matter of law are not sufficient. So for those reasons, we would ask the court to affirm both of the challenge judgments below. Thank you. Just a few brief points in reply. So the first has to do with what Rule 56D requires, and there is nothing in the rule itself that says anything about making a request for discovery or making a motion for discovery. So the fact that Mr. Moore did not expressly request anything or invoke Rule 56D does not prohibit him from taking advantage of the protections of that rule. All this law, all this court's law requires is that he make his need for discovery clear, and that doesn't even have to be in writing, as I said before. And so he clearly did that here. He made it abundantly clear that he needed that discovery in his first opportunity to do so, which was in his response to BNSF's motion for judgment. We also, I think it's on the motion to amend points, there was no opportunity. It was clear that the district court, again, that Mr. Moore had no opportunity to even reply to BNSF or the evidence that it presented, and those were sort of additional procedural flaws. But it's also clear that Mr. Moore has, there is sufficient evidence to support a claim for COBRA notice because all that's required, even for a plaintiff to defeat summary judgment, is to show that he did not, or to have evidence that he did not receive it, receive the notice. And at the same time, a defendant who has to actually come forward with some evidence that they actually sent something, just having a letter or something like that is not sufficient. And so he, in his complaint, said everything he needed to do to allege those claims. And that he did not know who may have failed to send that notice is not dispositive here because from the very beginning of the advent of the federal rules, it's been permissible for plaintiffs to adequately allege their claims, even when they don't know which defendant was the one who wronged them. So there was, in Rule 84, there was a form attached to that since the late 1930s that was a form complaint about what a plaintiff, how they should plead their case when that plaintiff didn't know which defendant had done things wrong. So finally, just turning to Judge Moore, I'm sorry, Judge Hughes. Ultimately, this case is really just about the unfairness of the process and the unfairness of the result that Mr. Moore received. And so the rules are, why we have them is to ensure that plaintiffs, and all parties, have a baseline opportunity to fairly proceed and develop their case. And that just did not happen here. We're not here to pick on Judge Hughes in particular, but the fact is that he has repeatedly gone awry in very similar ways in other cases, and those are all persuasive here. And while this may be a somewhat closer case than those other cases, a judge does not need to say, I will crush you in order to abuse his discretion. What we have here is very similar things as in those other cases. From the get-go, in the only conference that happened, the judge made it clear that he thought very little of Moore in his claims, and then he proceeded to deny Moore every opportunity to make his case. I give you your honors.